### THE JAMES W. FOLLETTE.

### THE I. L. I. NO. 105.

### COYNE v. ERIE & ST. LAWRENCE CORPORATION.

### No. 142.

Circuit Court of Appeals, Second Circuit.
Jan. 29, 1934.

Stanley & Gidley, of Buffalo, N. Y. (Arthur E. Otten, of Buffalo, N. Y., of counsel), for appellant.

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

This is an action in rem brought against the motorship I. L. I. No. 105 by the owner of the canal steamer James W. Follette to recover for injuries sustained by the Follette when a scow collided with her stern when the No. 105 passed the Follette in the barge canal.

Between 11 o'clock and midnight on the night of November 5, 1928, the Follette, with a push boat ahead and five barges in tandem, close coupled on a hawser about 350 feet long, was going westerly on the barge canal. She was partly loaded and so was the barge she was pushing ahead. The last two barges on the hawser were light, and the others partly loaded. The Follette is 96 feet long and 17 feet 6 inches wide. As she was near the lift bridge at Hulburton, N. Y., known as Bridge E. 192, the I. L. I. No. 105 came up behind and blew two whistles for consent to pass. The captain of the Follette thought the conditions there unsuitable for passing and blew an alarm. The No. 105 blew a second passing signal a little later which the Follette answered with two. The No. 105 then came on to pass.

At that point the canal is about 12 feet deep, 75 feet wide at the bottom, and 90 feet wide at the top. The north bank is rocky and nearly perpendicular. The south bank is sloping. The current flowed easterly about a mile an hour, and some wind was blowing from the west.

The No. 105 was 254 feet long, had a beam of 36 feet, and was drawing 9 feet and 3 inches. She was a twin screw boat with three rudders, and was equipped with 180 horse power Diesel engines.

After the exchange of passing signals, the Follette went ahead slowly hugging the north bank until she sighted in the darkness a few feet ahead a scow with a deck load of stone tied up on the north bank. A light on the scow could not be seen until the Follette was almost upon it. She then sounded an alarm, and somebody called out that there was a scow ahead. The size of this scow was estimated. It was probably a little less than 30 feet wide and 75 feet long. The Follette passed the scow so closely that she rubbed along the side. When her stern was about 50 feet ahead of the scow, she put the barge she was pushing ahead up against the north bank and stopped with her stern some 10 feet off the bank. Her hawser barges were then all east of the scow. While the Follette was doing this, the No. 105 had come on about halfway past the hawser tow when she discovered that her suction was pulling those barges out of line. She then stopped, put out a line to one of the barges, and backed until they were in shape again. Then she went on. Her speed was variously estimated from about two miles to less than one mile per hour, but, as she started from a dead stop, it must have been slow when she was abreast the moored scow. She passed the scow and then the Follette and her push boat. As she was passing the Follette, the scow collided with the Follette's stern and did some damage. It was claimed by the libelant that the suction of the No. 105 pulled the scow loose and into the stern of the Follette; and by the claimant that the Follette backed into the scow. It was agreed by all that the scow after the accident was held only by a line from her bow to a derrick on the north shore and that the loosening of a line from her stern, still attached to an iron pin which had been pulled out of the ground, had let her swing out into the canal.

The trial court found that the suction created by the No. 105 pulled the scow around to hit the Follette. The testimony as to the relative positions of the boats and all the conditions at the time made such a finding reasonable. It is true that in the opinion filed by the trial judge (—— F. Supp. ——) the displacement of water in the canal with "these three vessels abreast" (meaning the Follette, the No. 105, and the scow) and the consequent inrush of water as the two larger ones passed on, is mentioned as the cause of the suction he finds did pull the scow against the Follette. This was clearly inadvertent, for it is apparent that the No. 105 first passed the scow and then the Follette. Yet the judge expressly found that the Follette did not back into the scow. In this connection the opinion is unequivocal. He says: "The defense was set up in the answer that the 'Follette' backed into the scow and there was some testimony to that effect, but after hearing and seeing the witnesses, I am left with no doubt that this is not so." But the suction which did pull the scow around to strike the Follette was caused by the No. 105 when she was moving so slowly that such a result was not to be foreseen. Indeed, had both ends of the scow been made fast to suit-

able moorings when the No. 105 passed by, it is a safe conclusion that the accident could not have happened. It seems almost certain either that the iron pin was dislodged when the Follette rubbed against the scow in passing or that it had not been driven into the bank sufficiently to withstand whatever force would be exerted upon it by the passage of ordinary traffic in the canal. However this may be, we merely suggest these possibilities in considering whether the proof shows that the No. 105 was at fault. We are not prepared to say that the No. 105 could not be in the exercise of due care in passing the scow and the Follette as she did without first examining the mooring of the scow to ascertain whether the inevitable return to its normal condition of the water displaced by her passage would be likely to pull the scow against the Follette. The alarm which the Follette blew on sighting the scow was no more than a means of calling her presence to the attention of the No. 105. The fact that the Follette pulled over against the bank and stopped after passing the scow shows that she expected the No. 105 to come on notwithstanding the alarm. All in all it seems to us that the navigation of the No. 105 was prudent and lawful, and that, in so far as it contributed to the accident, it did not create any liability for the damage the Follette sustained. The City of Hartford v. Rideout, 97 U. S. 323, 24 L. Ed. 930; Stainback et al. v. Rae et al., 14 How. 532, 14 L. Ed. 530.

Decree reversed.